UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
THEODORE SMITH,

                 Plaintiff,

      - against -

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, JOEL I. KLEIN, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES AS
EMPLOYEES OF THE NEW YORK CITY DEPARTMENT
OF EDUCATION, RICHARD CONDON, GERALD P.
CONROY, Individually and in their
capacities as Members of the New York
City Special Commissioner of
Investigation,

               Defendants.
---------------------------------------X

**MEMORANDUM AND ORDER**

06 CV 4613 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Theodore Smith ("Smith"), formerly a teacher in the New York City public school system, brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., 42 U.S.C. § 1983, the New York Civil Service Law, N.Y. Civ. Serv. Law § 75-b, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 et seq.  In his complaint, Smith alleges, inter alia, that the defendants discriminated against him and retaliated against him due to his disability, age, and

union membership.    Smith also alleges that the defendants
defamed him and violated his civil rights by, among other
things, releasing an investigative report that concluded that
Smith had threatened an arbitrator at a quasi-judicial
administrative proceeding.

Before this Court is defendants' motion for summary
judgment on each of Smith's claims.   Specifically, defendants
move for summary judgment on two principal grounds: first, that
Smith is precluded from relitigating the findings made by
neutral hearing officers at two prior quasi-judicial
administrative proceedings; and second, that Smith failed to
file a notice of claim, as required by state law.

For the reasons discussed below, defendants' motion is
granted.

## BACKGROUND

### I.   Factual Background

#### A.   Employment Background

Smith began working as physical education and health
teacher for the New York City public school system in 1995 and
was awarded tenure in 1999.[1]    (R. 56.1 ¶ 2; Second Amended

---

[1] The facts recited herein are drawn from Defendants' Statement of Undisputed
Facts Pursuant to Local Civil Rule 56.1 ("R. 56.1"), dated November 8, 2010,
the Declaration of Isaac Klepfish in support of the defendants' motion for
summary judgment ("Klepfish Decl"), dated November 8, 2010, and the exhibits
thereto.   Pursuant to Rule 56.1 of the Local Rules of the United States
District Courts for the Southern and Eastern Districts of New York ("Local
Rules"), "each statement controverting any statement of material fact[] must

Complaint ("SAC") ¶ 23.[2])  For the 2004-2005 academic year, Smith was assigned to the New York Museum School ("Museum School"), where Lindley Uehling ("Uehling") served as principal. (R. 56.1 ¶¶ 3-4; Klepfish Decl. Ex. D.)

After the conclusion 2004-2005 academic year, the New York City Department of Education ("DOE") preferred twenty-seven charges against Smith pursuant to section 3020-a of New York's

---

be followed by citation to evidence which would be admissible[] as required by Fed. R. Civ. P. 56(c)." Local Rule 56.1(d). Where a party opposing a motion for summary judgment fails to specifically controvert a statement of material fact, the statement is "deemed to be admitted for the purposes of the motion." Local Rule 56.1(c); see also Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 312 (2d Cir. 2008). Because Smith failed to file a statement pursuant to Local Rule 56.1, we could deem the defendants' statement of undisputed facts to be admitted for purposes of this motion. However, we have conducted our own review of the documents that defendants cite in support of their Rule 56.1 statement to confirm the defendants' recitation of the facts and to supplement those facts where necessary. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal citations and quotation marks omitted).

[2] Smith originally commenced this action on June 15, 2006. Following a lengthy stay while the administrative proceedings and state court challenges ran their course, Smith filed his first amended complaint on January 11, 2010. Thereafter, plaintiff's counsel sought to file a second amended complaint and shared a draft of the second amended complaint with defense counsel. In June 2010, plaintiff and defense counsel filed a stipulation that would permit plaintiff to file and serve his second amended complaint. On June 10, 2010, this Court so-ordered the stipulation, which provided that "[t]he Second Amended Complaint dated June 2, 2010 shall be filed with the court forthwith . . ." However, plaintiff failed to file the second amended complaint at the time and an amended pleading was not filed until January 2011, as an exhibit to his opposition to the instant motion. Defendants' briefing is based on the version of the second amended complaint, dated June 2, 2010, that plaintiff was authorized to file. (Klepfish Decl. Ex. B.) The version of the second amended complaint that plaintiff's counsel filed in January 2011 is dated July 14, 2010 and, other than three additional paragraphs, appears to be identical to the version of the Second Amended Complaint dated June 2, 2010. Accordingly, because the Court authorized the filing of the version of the second amended complaint dated June 2, 2010, and because the differences between the two versions are minimal, any citation to the "Second Amended Complaint" is to the version dated June 2, 2010.

Education Law.  (R. 56.1 ¶ 5; Klepfish Decl. Ex. E.)  According to the DOE, Smith had engaged in misconduct, neglect of his duties, insubordination, incompetence, and time and attendance abuse throughout the school year.  The DOE concluded that this alleged conduct constituted just cause for Smith's termination. (R. 56.1 ¶ 6; Klepfish Decl. Ex. E.)

### B.   First Hearing and Appeal

Section 3020-a of New York's Education Law sets forth the procedures that govern a hearing on charges preferred against a tenured teacher.  N.Y. Educ. Law § 3020-a.  Pursuant to that statute, Jack D. Tillem ("Hearing Officer Tillem") was designated as the hearing officer who would conduct a hearing on the charges against Smith ("First Hearing").  (R. 56.1 ¶ 7.)

At the First Hearing, which lasted eighteen days, Smith was represented by counsel, who presented witnesses and introduced evidence on Smith's behalf, and who conducted cross examination of the witnesses that testified against Smith.  (R. 56.1 ¶¶ 8-9, 11-13.)  In challenging the allegations, Smith asserted that the charges were unfounded, that Uehling manufactured the claims against him in an attempt to remove him from the Museum School, that Uehling failed to disclose that Smith would have to teach oversized classes, and that the oversized classes adversely affected his health and his attendance.  (R. 56.1 ¶¶ 10-12; Klepfish Decl. Exs. D-E.)

The final day of the First Hearing was scheduled for May 10, 2007, and the parties anticipated making their closing arguments. On that date, however, Hearing Officer Tillem recused himself and closing arguments were adjourned. (R. 56.1 ¶ 14.) At first, Hearing Officer Tillem stated on the record that he had recused himself because Smith had accused Tillem of harboring a bias against him. (Klepfish Decl. Ex. D at 1056-59; Klepfish Decl. Ex. F.) Shortly thereafter, Hearing Officer Tillem made clear that he had recused himself because Smith had uttered death threats against him. (Klepfish Decl. Ex. D at 1063-67; Klepfish Decl. Ex. F.)

Following Hearing Officer Tillem's recusal, Howard C. Edelman ("Hearing Officer Edelman") was assigned to oversee the remainder of the First Hearing. (R. 56.1 ¶ 15.) Thereafter, Smith requested, and Hearing Officer Edelman granted, a number of adjournments so that Smith could retain new counsel and Smith's counsel could familiarize himself with the record. (Klepfish Decl. Ex. E at 43-44.)

The parties reconvened on August 10, 2007, at which time Smith objected to having Hearing Officer Edelman decide the case on the prior record and requested a hearing de novo. Hearing Officer Edelman denied Smith's request for a new hearing but permitted Smith to submit supplementary testimony and evidence.

(R. 56.1 ¶ 16; Klepfish Ex. E at 43-44.)   Plaintiff, however, refused to avail himself of this opportunity.  (R. 56.1 ¶ 16.)

After additional conference calls and after affording Smith and his counsel the opportunity to make a closing argument, which they declined to make, Hearing Officer Edelman closed the record.  (Klepfish Decl. Ex. E at 42-47.)  Then, on December 4, 2007, Hearing Officer Edelman issued a seventy-seven page opinion.  In that opinion, Hearing Officer Edelman found Smith guilty of the majority of the charges preferred by the DOE -- specifically, specifications 2, 3, 4-a, 4-b, 4-d, 4-e, 5, 7-a, 7-b, 7-c, 8-a, 9, 10, 11, 12, 15, 16, 18, 19, 20, 21-a, 22, 23, 24, 25, 26, and 27.  (R. 56.1 ¶¶ 17-18.)

Among other things, Hearing Officer Edelman rejected Smith's assertions that Uehling failed to advise Smith that he would be teaching oversized classes and that Uehling manufactured the claims against Smith in order to punish him for complaining about his class size.  (R. 56.1 ¶ 19.)  Hearing Officer Edelman further concluded that Smith failed to properly supervise his classes, failed to establish classroom rules, dismissed his classes prematurely, failed to develop suitable lesson plans or adequately instruct his class, was excessively absent, and deliberately missed scheduled meetings.  (R. 56.1 ¶¶ 20-42.)

Smith later commenced an Article 75 proceeding in the Supreme Court of the State of New York to review Hearing Officer Edelman's ruling. (R. 56.1 ¶ 44.) On appeal, the Appellate Division upheld Hearing Officer Edelman's ruling and rejected Smith's claim that he was denied due process. In re Smith v. New York City Dep't of Educ., 67 A.D.3d 555, 556, 890 N.Y.S.2d 12, 13 (1st Dep't 2009), leave to appeal denied, 14 N.Y.3d 705, 925 N.E.2d 933, 899 N.Y.S.2d 129 (2010). In its opinion, the Appellate Division reasoned that due process does not require that a final determination be made by the same neutral hearing officer who presided over the evidentiary hearing. Id. The court further reasoned that "the sole reason that the replacement arbitrator was substituted in this matter was because [Smith] issued threats to the first arbitrator, which led to his recusal," and that Smith was not entitled to profit from his own disruptive behavior. Id.

The New York Court of Appeals denied Smith's application for leave to appeal the Appellate Division's ruling.

### C.   Second Hearing and Appeal

After Hearing Officer Tillem recused himself, the allegations regarding Smith's conduct were reported to the Special Commissioner of Investigations for the New York City School District ("SCI"), which conducted an investigation into the underlying events. (R. 56.1 ¶ 47.) After taking testimony

and collecting evidence from various witnesses, including from Smith, who was represented by counsel, SCI concluded that Smith had indeed made death threats against Hearing Officer Tillem and recommended that Smith be terminated.  (R. 56.1 ¶¶ 47-49.)  The SCI documented its findings in a letter dated October 9, 2007. (Klepfish Decl. Ex. F.)

In light of those findings, the DOE preferred a new set of charges against Smith.  (R. 56.1 ¶¶ 45-46.)  Thereafter, Bonnie Siber Weinstock ("Hearing Officer Weinstock") was designated, in accordance with section 3020-a of the Education Law, to hear charges that Smith had engaged in misconduct, conduct unbecoming a teacher, criminal conduct, and neglect of duty ("Second Hearing").  (R. 56.1 ¶¶ 45, 50.)

The Second Hearing lasted seven days, and at that hearing, Hearing Officer Weinstock also considered additional charges regarding time and attendance issues that the DOE preferred against Smith.  (Klepfish Decl. Ex. G; R. 56.1 ¶ 51.)  At this hearing, Smith was again represented by counsel and was again afforded the opportunity to testify on his behalf, examine witnesses, and introduce evidence.  (R. 56.1 ¶ 52.)

On June 1, 2010, Hearing Officer Weinstock concluded, among other things, that Smith had made death threats against Hearing Officer Tillem in connection with the First Hearing, and that Smith's conduct constituted just cause for his termination.  (R.

56.1 ¶ 53.)    Shortly  thereafter,  Smith  commenced  a  second
Article 75 proceeding to challenge the outcome of the Second
Hearing.  (R. 56.1 ¶ 54.)

On November 8, 2010, the Supreme Court of the State of New
York  upheld  Hearing  Officer  Weinstock's  decision,  concluding
that  there  was  no  cognizable  basis  for  vacating  the  decision.
In re Smith v. New York City Dep't of Educ., 29 Misc. 3d 1224A,
920 N.Y.S.2d 244 (Sup. Ct. N.Y. Cnty. Nov. 8, 2010).

## II.  Procedural Background

Smith  commenced  this  lawsuit  on  June  15,  2006,  alleging,
among  other  things,  that  the  defendants  discriminated  and
retaliated against him on the basis of his disability and age,
in violation of federal and state law.[3]  In November 2007, this
action was stayed pending the outcome of the First Hearing, the
anticipated Second Hearing, and any related appeals.

In  late  2009,  Smith  sought  leave  to  reinstate  his  case.
Following  two  amendments  to  the  complaint,  the  defendants  named
in  the  Second  Amended  Complaint  filed  a  motion  for  summary
judgment on all of Smith's claims.[4]

---

[3] According to the defendants, Smith failed to file a notice of claim prior to
commencing his federal lawsuit.  (R. 56.1 ¶ 55.)

[4] The defendants named in the Second Amended Complaint are the DOE, Joel I.
Klein, individually and in his official capacity as an employee of the DOE,
Richard Condon, individually and in his capacity as a member of the SCI, and
Gerald P. Conroy, individually and in his official as a member of the SCI.
Each of the four defendants join in the instant motion.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)); see also Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial.   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial.   Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998) (citing Celotex, 477 U.S. at 322).   In determining whether a genuine issue of

material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.   See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

## II.  Analysis

As previously noted, Smith asserts a number of claims against the defendants: that he was discriminated against and retaliated against on the basis of his disability, age, and union membership; that he was retaliated against for complaining about the large physical education class sizes at the Museum School; that defendants defamed him by publishing the SCI's investigative findings regarding Smith's alleged threat against Hearing Officer Tillem, by circulating statements that Smith was "incompetent," "unprofessional," and "irresponsible," and by placing statements in Smith's personnel file that he was "faking" his illness; and that defendants deprived Smith of due process by stigmatizing him and by removing him from the classroom and docking his pay without a hearing.

Defendants move for summary judgment on the grounds that Hearing Officers Edelman and Weinstock found Smith guilty of misconduct, insubordination, and unexcused absences, among other things, and rejected Smith's contention that the charges against him were unfounded, trumped up, and retaliatory.  Therefore, according to defendants, Smith is precluded from relitigating

these findings under the doctrine of collateral estoppel. Defendants also contend that they are entitled to summary judgment on all of Smith's state law claims because Smith failed to file a notice of claim as required under New York state law.

### A.   Legal Principles

#### 1.   Collateral Estoppel

The doctrine of collateral estoppel bars relitigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (quoting United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999)) (internal quotations omitted).

"Under New York law, collateral estoppel precludes a plaintiff from contesting in a subsequent action issues clearly raised in a prior proceeding and decided against that party, irrespective of whether the tribunals or causes of action are the same . . ." El-Shabazz v. State of New York Comm. on Character & Fitness, No. 10-2323-cv, 2011 WL 2617857, at *1 (2d Cir. July 5, 2011) (emphasis added). More specifically, the Second Circuit has held that the findings reached through

section 3020-a hearings, which are "quasi-judicial administrative action[s] . . . are entitled to preclusive effect . . . ." Burkybile v. Bd. of Educ., 411 F.3d 306, 308 (2d Cir. 2005); see also Roemer v. Bd. of Educ., 150 F. App'x 38, 39 (2d Cir. 2005); Batyreva v. New York City Dep't of Educ., No. 07 Civ. 4544 (PAC) (DF), 2010 WL 3860401, at *9-10 (S.D.N.Y. Oct. 1, 2010).

### 2.  Notice of Claim Requirement

Section 3813 of New York's Education Law requires the filing of a notice of claim prior to the commencement of an action against the DOE or its officers.  See N.Y. Educ. Law § 3813(1).  Specifically, under New York law, a plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and show that in that time period the defendant has either neglected or refused to satisfy the claim.  See id.; see also N.Y. Gen. Mun. Law § 50-e.  Additionally, no tort claim can be brought without a notice of claim "against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or employee acting in the discharge of his duties within the scope of his employment. . . ."  N.Y. Educ. Law § 3813(2).

These notice of claim requirements apply to state law claims regardless of whether those claims were brought in state or federal court.  See Felder v. Casey, 487 U.S. 131, 151 (1988); Hardy v. New York City Health & Hosps. Corp, 164 F.3d 789, 793 (2d Cir. 1999).  Additionally, the requirements apply to causes of action sounding in discrimination, retaliation, and defamation.  See, e.g., Houston v. Nassau County, No. 08 Civ. 197 (JFB) (WDW), 2011 WL 477732, at *7 (E.D.N.Y. Feb. 2, 2011) (defamation claim); Lewinter v. New York City Dep't of Educ., No. 09 Civ. 227 (PGG), 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010) (discrimination claim under the NYCHRL); Augustin v. Enlarged Sch. Dist. of Newburgh, 616 F. Supp. 2d 422, 445-46 (S.D.N.Y. 2009) (discrimination claims under the NYSHRL); Moore v. Middletown Enlarged City Sch. Dist., 57 A.D.3d 746, 748, 871 N.Y.S.2d 211, 212 (2d Dep't 2008) (retaliation claims); Gondal v. New York City Dep't of Educ., 19 A.D.3d 141, 141-42, 796 N.Y.S.2d 594, 594 (1st Dep't 2005) (defamation claim).

"Notice of claim requirements are construed strictly by New York state courts and failure to abide by their terms mandates dismissal of the action."  AT&T v. New York City Dep't of Human Res., 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases).

### B.   Federal Claims

#### 1.   Federal Discrimination Claims

Counts One and Four of Smith's Second Amended Complaint allege that defendants discriminated against Smith on the basis of Smith's disability and age, in violation of the ADA and ADEA, respectively.  According to Smith, the defendants discriminated against him because of his disability, a heart condition, and at a time when he was over forty years old.  Defendants contend that the findings at the prior two hearings are entitled to preclusive effect and therefore plaintiff cannot succeed on his discrimination claims.

As discussed above, collateral estoppel precludes a party from relitigating issues that were actually litigated and decided in a prior proceeding and that are, among other things, identical to the issues raised in a later proceeding. Accordingly, we first examine what Smith is required to prove in connection with the federal discrimination claims raised in his Second Amended Complaint.

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas Corp. v.

15

Green, 411 U.S. 792, 802 (1973); see also James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000).

If the plaintiff establishes a prima facie case of discrimination, the burden of production then shifts to the defendant to offer legitimate, nondiscriminatory rationale for its actions. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas, 411 U.S. at 802-03. After the defendant articulates a legitimate reason for the action, the plaintiff must demonstrate that the proffered reason is pretextual. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981). To meet this burden, the plaintiff must demonstrate that: (1) the proferred reasons are false; and (2) the real reason was unlawful discrimination. See Kerzer v. Kingly Mfg., 156 F.3d 396, 401 (2d Cir. 1998).[5] Ultimately, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., __ U.S. __, 129 S. Ct. 2343, 2352 (2009).

---

[5] In 2009, the Supreme Court of the United States questioned whether this burden-shifting framework applies to ADEA claims. See Gross v. FBL Fin. Servs., Inc., __ U.S. __, 129 S. Ct. 2343, 2349 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of [McDonnell Douglas] utilized in Title VII cases is appropriate in the ADEA context.") (internal citations omitted). However, the Second Circuit has consistently applied McDonnell Douglas to ADEA claims, and has continued to do so after the Supreme Court's decision in Gross. See Holowecki v. Fed. Express Corp., 382 F. App'x 42, 45 n.2 (2010) ("Unless and until the Supreme Court instructs us to do otherwise, we will continue to apply McDonnell Douglas to claims arising under the ADEA.").

Smith also asserts two related theories of disability discrimination under the ADA: that defendants discriminated against him on the basis of his disability and that defendants failed to make reasonable accommodations to address his disabilities. To establish a prima facie case of discrimination under the ADA, a plaintiff must establish that: "(1) plaintiff's employer is subject to the ADA; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodation; and (4) plaintiff suffered [an] adverse employment action because of her disability." Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004) (citing Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003)). Similarly, to establish a prima face case of discrimination arising from a failure to accommodate, a plaintiff must show that: "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009) (quoting Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)).

17

The same burden-shifting framework that applies to Smith's age discrimination claims under the ADEA applies to Smith's disability discrimination claims under the ADA.  See McBride, 583 F.3d at 96 ("Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in [McDonnell Douglas] . . . A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext.") (internal citation and quotations omitted).

As a threshold matter, and as discussed above, it is well-settled that the First Hearing and Second Hearing, which were conducted in accordance with section 3020-a of the Education Law, may be afforded preclusive effect.  See Burkybile, 411 F.3d at 308.  For the following reasons, we agree with defendants that the doctrine of collateral estoppel in fact bars the federal discrimination claims raised in this action.

First, in finding Smith guilty of misconduct, time and attendance abuse, insubordination, and neglect of duty, among other things, the hearing officers addressed the same factual issues that are raised herein.  In other words, in both contexts, it becomes necessary to resolve whether Smith was

18

subjected to adverse employment actions because of his own conduct or because of other factors, such as impermissible discrimination by defendants.

Second, in finding Smith guilty of the above-mentioned charges and rejecting Smith's arguments that Principal Uehling and others manufactured the charges against him, the parties actually litigated and the hearing officers actually decided that any adverse employment action was justified and not based on impermissible discrimination. Thus, because the hearing officers concluded that there existed just cause for the adverse employment actions, those officers actually decided that Smith cannot make out a prima facie case of discrimination nor can he put forth evidence of pretext.

Third, there can be no real dispute that Smith had a full and fair opportunity to litigate the issues raised in connection with the instant discrimination claims. The First Hearing, where Smith was represented by counsel of his choosing, lasted 18 days. That hearing involved the examination and cross examination of numerous witnesses and the introduction of evidence. Likewise, at the Second Hearing, which lasted seven days, Smith, who was again represented by counsel, had the opportunity to introduce evidence and call witnesses, cross examine witnesses, and make arguments.

Fourth, it is clear that the findings of the hearing officers regarding the propriety of the adverse employment action were not only necessary to support a valid and final judgment on the merits, but that those finds were the key conclusions reached at the hearings.

Because we conclude that the doctrine of collateral estoppel bars Smith's discrimination claims, we grant defendants' motion for summary judgment on Counts One and Four.

### 2.   Federal Retaliation and Hostile Work Environment Claims

In Counts Three and Five of the Second Amended Complaint, Smith alleges that defendants retaliated against him and subjected him to a hostile work environment on the basis of his disability and his age.  Again, defendants contend that Smith is precluded from relitigating the findings of the hearing officers in the two prior quasi-judicial proceedings and therefore defendants are entitled to summary judgment on these claims.

To establish a prima facie case of retaliation under either the ADEA or the ADA, a plaintiff must establish that: "(1) the employee was engaged in a protected activity under the [relevant statute], (2) the employer was aware of the activity, (3) an adverse employment action occurred with respect to plaintiff, and (4) a causal connection exists between the protected activity and the adverse employment action."  <u>Valtchev v. City</u>

of New York, 400 F. App'x 586, 589 (2d Cir. 2010) (citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)) (ADA retaliation claim); Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (ADEA retaliation claim).

Retaliation claims under the ADA and ADEA are subject to the same burden-shifting analysis as claims arising under Title VII. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (ADEA retaliation claim); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADA retaliation claim).

As to Smith's hostile work environment claims, such claims that arise under the ADEA require a showing that: (1) the plaintiff was subjected to harassment, based on his age, that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment"; and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citation omitted). To be "severe or pervasive," a plaintiff must show that the objectionable conduct: (1) was "objectively severe or pervasive -- that is, . . . create[d] an environment that a reasonable person would find hostile or abusive"; (2) created an environment that the plaintiff "subjectively perceive[d] as hostile or abusive"; and

(3) was on account of the plaintiff's age.  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citing Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)).

Although the Second Circuit has not held that a hostile work environment claim is cognizable under the ADA, see Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 88 & n.3 (2d Cir. 2010), courts in this circuit analyze ADA hostile work environment claims under the same standards noted above.  See id. (applying standard for ADEA hostile work environment claim); see also Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (same standard applies to hostile work environment claims arising under Title VII and the ADA).

For essentially the same reasons discussed in connection with Smith's discrimination claims, we agree that the doctrine of collateral estoppel precludes Smith from succeeding on his retaliation and hostile work environment claims.  To reiterate, Hearing Officers Edelman and Weinstock concluded that Smith had engaged in misconduct, time and attendance abuse, had otherwise neglected his classroom duties, and had uttered death threats against another hearing officer.  The hearing officers also concluded that, because of Smith's conduct, there was just cause for taking adverse employment action against Smith -- including suspension and, ultimately, termination.  In light of these findings, we conclude that Smith is precluded from relitigating

these central issues, and therefore cannot establish a causal connection between any protected activity and the adverse employment actions for the purpose of a discrimination claim, nor can Smith establish that any harassment was on account of Smith's age or disability for the purpose of his hostile work environment claims.

Accordingly, we also grant defendants' motion for summary judgment in connection with Counts Three and Five of the Second Amended Complaint.[6]

### 3.   Section 1983 Claim

In Count Twelve of the Second Amended Complaint, Smith alleges that the DOE violated § 1983 by:

> stigmatizing and disparaging [him] with outrageous allegations of incompetence, intentionally blocking access to [his] personnel file by prospective employers and depriving [him] of his right to work in his chosen profession -- by casting him out to the rubber room -- without a hearing, and by denying [him] the compensation to which he is properly entitled, also without a hearing.

(SAC ¶ 144.)  Although Smith has not elaborated upon the nature of this claim in the Second Amended Complaint, and merely repeats this allegation in his opposition to the instant motion

---

[6] In opposition to defendants' motion for summary judgment, Smith contends that collateral estoppel should not apply because Counts Eleven and Twelve, which allege defamation under New York state law and violation of Smith's due process rights under § 1983, were not raised in the prior proceedings. However, the assertion of these two additional claims does not alter the preclusive effect of the prior hearings on the issues actually litigated and actually decided in the prior hearings.

for summary judgment, we conclude that no genuine issue of material fact exists for trial under any colorable theory of liability under § 1983.

First, to establish that Smith was deprived of his liberty interest in his reputation without due process -- a so-called "stigma-plus" claim -- he must prove: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotations omitted) (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.)). Thus, central to a successful stigma-plus claim is proof that the alleged disparaging statement is false. See Vega, 596 F.3d at 82 (citing Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)) (dismissing stigma-plus claim where plaintiff "has not established a threshold requirement -- the existence of a reputation-tarnishing statement that is false") (emphasis in original). Here, the statements that appear to be at issue concern Smith's threats against Hearing Officer Tillem and Smith's lack of professionalism. Those very statements were found to be true in the First and Second Hearings and those findings were upheld in Article 75 proceedings. Accordingly, we

24

find that Smith cannot successfully maintain a stigma-plus claim in this action.

Second, Smith cannot successfully assert a due process claim against the DOE. Assuming _arguendo_ that Smith asserts a claim here that is distinct from the issue resolved in his state court litigation, _see_ _In re Smith_, 67 A.D.3d at 556 (rejecting Smith's due process challenge to the First Hearing), we nevertheless conclude that Smith was afforded adequate process. As discussed repeatedly herein, Smith availed himself of two proceedings under section 3020-a of the Education Law, in which neutral hearing officers adjudicated the disciplinary charges preferred against him -- the very charges that resulted in Smith's removal from the classroom and docked pay. Smith also commenced two Article 75 proceedings in which the decisions of the quasi-judicial administrative hearings were subject to state court review. Accordingly, because Smith received all the process due to him -- namely, notice and an opportunity to be heard on the charges against him -- he cannot rebut defendants' showing that no genuine issue of material fact exists for trial. _See_ _Sindone v. Kelly_, 254 F. App'x 58, 59 (2d Cir. 2007) (availability of an Article 78 proceeding confers an adequate post-deprivation remedy); _Strong v. Bd. of Educ._, 902 F.2d 208, 211-12 (2d Cir. 1990) (no due process violation where adequate post-deprivation remedy for tenured teachers exists).

Thus, we grant defendants' motion for summary judgment on Count Twelve of the Second Amended Complaint.

### B.   State Law Claims

In Counts Two, Six, Seven, Eight, Nine, and Ten of the Second Amended Complaint, Smith contends that the defendants discriminated against him and retaliated against him based on his age, disability, and union membership, in violation of state and local law.   Additionally, in Count Eleven of the Second Amended Complaint, Smith alleges that defendants defamed him by circulating false statements about Smith, including, but not limited to, the SCI's investigative findings regarding Smith's threat against Hearing Officer Tillem.

As discussed above, under New York's Education Law, Smith was required to file a notice of claim within three months of the cause of action.   Here, defendants have submitted a sworn affidavit declaring that the defendants were not served with a notice of claim.   (Klepfish Decl. Ex. H.)   Smith does not contest this sworn statement nor does he direct our attention to a notice of claim that he filed as required by section 3813 of the Education Law.   Thus, because Smith failed to comply with the notice of claim requirements, the above-mentioned state law claims must be dismissed.   See Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193, 196-97 (S.D.N.Y. 2006).

The defendants also assert that Smith's defamation claim must fail because the defendants, as individuals who officially participate in the processes of government, had an absolute privilege.  See 600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d 130, 135-36, 603 N.E.2d 930, 932, 589 N.Y.S.2d 825, 827 (1992), cert. denied 508 U.S. 910 (1993); Park Knoll Assocs. v. Schmidt, 59 N.Y.2d 205, 209, 451 N.E.2d 182, 184-85, 464 N.Y.S.2d 424, 426-27 (1983).  Because we conclude that the defamation claim must be dismissed due to Smith's failure to comply with the notice of claim requirement, we decline to reach this additional basis for summary judgment.

## CONCLUSION

For the foregoing reasons, the motion (docket no. 19) is granted.

Dated:    New York, New York
          July 18, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
Robert S. Lewis, Esq.
53 Burd Street
Nyack, NY 10960

**Attorney for Defendant**
Isaac Klepfish, Esq.
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007

28